## THE PROPRIETORS OF ENFIELD *versus* NATHANIEL PERMIT.

A mistake in the charter of a township cannot be corrected by a court of law, in a suit between individuals.

No particular terms are necessary to be used in order to constitute a grant by the legislature.

A State may be estopped by the acts of its legislature.

THIS was a writ of entry, brought to recover a tract of land in Enfield, and was tried here at May term, 1829, upon the general issue, when a nonsuit was entered, subject to the opinion of the court upon the following case.

In the charter of Enfield, dated July 4, 1761, the township is thus described : " beginning at the south-east corner of Lebanon, from thence south sixty-eight degrees east, six miles and three fourths of a mile ; thence north forty-three degrees east, five miles and one half ; thence north fifty-eight degrees west, seven miles and one half, to the north-east corner of Lebanon ; from thence by the east side of Lebanon to the first bound mentioned. The land demanded in this case is not within the limits of Enfield, as above described in the charter. But on the back of the charter is a plan of the township, where the line, which is mentioned in the charter as running " south sixty-eight degrees east," is laid down as running " south fifty-eight degrees east ;" and the township, as described on the plan, includes the demanded premises. There is in the charter no reference to the plan.

The township, according to the charter, is represented in the following plan by the dotted lines $a, g, m, n$. The plan on the back of the charter corresponds to the lines $a, b, c, d$, on the plan which follows. The township of Enfield, surveyed agreeably to the words of the charter, includes a large tract of land which is within the limits

of Canaan, and leaves a gore of land between Enfield and Grantham ; but surveyed according to the plan on the back of the charter, its lines will correspond with the lines of the adjoining towns.

On the 5th January, 1781, the proprietors of the township of Canaan applied to the government of the State by petition, stating that upon running out the township of Enfield, according to the charter, that township was found to include a portion of the territory which had been reputed to be within the limits of Canaan ; that upon examination, it was found that there was a gore of land between Grantham and Enfield which had not been granted by the government, but which had been left ungranted by a mistake in the charter of Enfield, in inserting "sixty-eight degrees" instead of fifty-eight degrees, as the course of one of the lines of the township, and that this mistake "interfered with and confounded" all the lines of the adjoining towns, wherefore they prayed that the said mistake might be corrected.

Upon this petition a day of hearing was appointed, and notice was ordered to be given to the selectmen of Grantham, Grafton and Enfield.

On the 22d March, 1781, a committee of the legislature reported that there was a clerical mistake in the point of compass of the line in the southerly side of Enfield ; and recommended that a committee of three judicious persons be appointed to adjust the disputes that had arisen between the townships of Canaan, Grafton and Enfield, in consequence of the said mistake, and to run out the lines and make the boundaries between the several parties in a just and equitable manner.

This report was accepted, and on the 28th March, 1781, an act was passed appointing three persons to run out the township of Enfield and make the proper boundaries thereof, and also the boundaries of Canaan and Grafton that were contiguous to Enfield, and declaring that the report of the committee, or the major part of them, being made to the secretary's office within one year, should be binding and conclusive in law upon all parties and persons whatever.

In 1801, the proprietors and selectmen of Enfield, presented a petition to the general court, stating that the committee appointed by the said act of March 28, 1781, made a report within the time limited in the same act, which report had been lost, and praying that a copy of the report might be filed with the secretary.

A similar petition was presented by the proprietors and selectmen of Canaan.

Upon these petitions a day of hearing was appointed, of which public notice, and notice to the selectmen of Grantham and Grafton, was ordered to be given.

And on the 18th June, 1802, an act was passed, declaring that a copy of the report of said committee, by which the said mistake was corrected, and the line between Enfield and Grantham established as running south fifty-eight degrees east, be received and recorded by the sec-

retary, and that the same be as effectual for the establishment of the boundaries of the towns of Enfield, Grafton and Canaan, as though the original report had been returned within the time prescribed.

It was stated by the committee in the said report, that the lines were established with the consent of all concerned.

The township of Grantham as described in the charter, which was dated June 8, 1767, is bounded as follows :— " Beginning at the south west corner of Enfield, from thence south fifty-eight degrees east, by the south line of Enfield six miles and three fourths of a mile, to the south east corner thereof, from thence south forty-one degrees west five miles and three fourths of a mile, &c. to the bound first mentioned."

*Blaisdell*, and *J. Parker* for the demandants.

*Bell*, for the tenant.

RICHARDSON, C. J., delivered the opinion of the court.

The question is, whether the demandants have showed a title to the demanded premises ? Those premises are not within the limits of the township of Enfield, as described in the charter, but are in a gore of land left between the territory described in the charter of Enfield, and the township of Grantham. It can hardly admit a doubt, that the gore was left out of the charter of Enfield by mistake. But this mistake cannot be corrected by a court of law. There is no ambiguity, either patent or latent, in the charter, in relation to the southerly line of Enfield. There is nothing on the face of the charter that indicates, in the slightest degree, an intention that the gore should be included in the township of Enfield, and to admit extrinsic proof that sixty-eight degrees were inserted in the charter by mistake, instead of fifty-eight degrees, would be a violation of one of the soundest and best established rules of evidence. 1 Caine's Rep. 358, *Jackson* v. *Bowen ;* 11 Johns. 201, *Jackson* v. *Sill ;* 10 ditto, 133, *Jackson* v. *Stanley ;* 12 ditto, 77, *Jack-*

*son* v. *Hart* ; 8 ditto, 375, *Fitzhugh* v. *Runyon* ; 17 ditto, 146, *Jackson* v. *Wilkinson* ; 6 Cowen, 281, *Jackson* v. *Marsh.*

Whether a mistake in a charter can be corrected in this court, in a suit between the State and the proprietors of the township, by virtue of our general jurisdiction, or under the statute of February 6, 1789, which empowers this court to try all causes touching the validity of grants by the State, and the performance of the conditions in such grants, it is unnecessary to consider in this case, because however that may be, it is clear such a mistake cannot be corrected in a suit between individuals. 6 Cowen, 281, *Jackson* v. *Marsh* ; 10 Johns. 23, *Johnson* v. *Lawton.*

It then remains to enquire, whether the said acts of the legislature, passed March 28, 1781, and June 18, 1802, have vested in the proprietors of Enfield, the gore in which the demanded premises are situated ? On this question it seems to us there can be no doubt. Application was made to the legislature to correct a mistake in the charter of Enfield. It seems not to have been disputed that there was a mistake, and a committee was appointed to correct it. The committee made a report, by which the mistake, with the assent of all concerned, was corrected, and the line of Enfield so established as to include the said gore in that township ; and that report is made by law conclusive between the parties. In those proceedings the State and the proprietors of Enfield and Canaan were clearly parties. The said acts of the legislature show conclusively, that the intention was that the gore should be vested in the proprietors of Enfield. There are no particular terms necessary to constitute a grant by the legislature. 6 Pick. 409, *Ward* v. *Bartholomew.* Individuals may establish a line between their lands by agreement. 7 Cowen, 761, *Rockwell* v. *Adams* ; 5 ditto, 371, *Doe* v. *Thompson* ; 4 ditto, 450, *Jackson* v. *Talmage* ; 9 Johns. 100, *Jackson* v. *Smith.*

And when the legislature have by statute established a particular line, as the line of a township, the State is estopped to say that the title of the proprietors of the township does not extend to such line. It is clear, that a State may be estopped by the acts of its legislature. 3 Pick. 224.

But the township of Grantham is described in the charter, as bounded on one side by a line running south fifty-eight degrees east by the south line of Enfield, and it is contended, that by a well known rule of construction the line of the town of Enfield, and not the point of compass, is to fix the north line of Grantham. If it appeared, that the south line of Enfield was, at the time when the charter of Grantham was made, a known marked line, which had been previously run out and monuments erected to designate it, it would certainly deserve very serious consideration whether the proprietors of Grantham could not hold to such line.

But it does not appear, that when the charter of Grantham was made, the south line of Enfield had been actually located, and there was then nothing to designate it except the point of compass mentioned in the charter of Enfield. What rule of construction is to apply in such a case it will be time enough to consider, when the proprietors of Grantham, or some person claiming under them, shall see fit to raise the question. We are of opinion that the actual location of the township of Enfield by the legislature, is valid against all the rest of the world. It does not appear that the tenant sets up any title under the proprietors of Grantham, and the nonsuit in this case must be set aside.