# REPORTS.

## GRAFTON,

### JULY TERM, A. D. 1841.

---

### BAILEY *vs.* CARLETON & a.

A party who enters into land under color of a conveyance, is presumed to enter according to his title, and thereby gains a constructive possession of the whole tract embraced in the deed, which may enure as an adverse possession of the whole, and continued for the term of twenty years bar the entry of him who has the legal title. *see* 4) R. 3)5.

But where a party having a deed which embraces land to which his grantor had good title, and other land to which he had no right, enters into and possesses that portion of the land which his grantor owned, but makes no entry into that part which he could not lawfully convey, he has no adverse possession of the latter.

In order to constitute a disseizin, constructively, by an entry and possession under color of title, the actual possession must embrace a portion of the land of the party alleged to be disseized, and be of a nature to indicate that there may be an adverse claim to the residue of the land included in the deed; and there must be a substantial change in the character of the possession.

Where divers persons had been accustomed to lay lumber upon a strip of unenclosed land, adjoining a river, for several years, without any claim of title, and one of them obtained a deed of the land from a person who in fact had no title, after which he and others continued to leave lumber there, as before, and he occasionally left farming utensils there also—*Held*, that this possession, mixed with that of others, as before, and without any actual notice to the owner, of a claim of title, did not constitute a disseizin, except at his election.

WRIT OF ENTRY, to recover two tracts of land in the lower village in Bath, one of said tracts being ten rods in length, and the other being four square rods of land, situated immediately south of and adjoining the first tract; both consti-

tuting a narrow strip of land, situated betwixt the main road through Bath village, and the Amonoosuck river.

The tract of land first described, and a house lot opposite to the same, on the other side of the road, were conveyed to Amos Town by Moses P. Payson, by two several deeds, executed on the 27th of March, 1807 ; and the tract containing four square rods was conveyed by said Payson, in November, 1807, to Buxton & Blake, who sold to one Morrison, and, in 1810, Morrison sold to said Town.

In February, 1813, Amos Town sold the three tracts of land to his brother, Solomon Town, and in April, 1815, Solomon Town re-conveyed the house lot opposite the demanded premises, to Amos Town, but did not include, in the description, the strip of land opposite, and now in controversy.

October 19th, 1815, Amos Town conveyed the aforesaid three several tracts, giving separate descriptions of each tract, to Ebenezer Carleton, and subsequently Carleton's title was conveyed to these defendants.

Solomon Town, in June, 1830, conveyed the demanded premises to one John Welsh. Welsh, in February, 1837, conveyed to the plaintiff, and this suit was brought for the recovery of the demanded premises, the 15th of April, 1837.

It appeared that Ebenezer Carleton, on his purchase of Amos Town in October, 1815, entered into possession of the house lot named in his deed, and lived on and occupied the same for many years, until it was conveyed to the defendant, E. Carleton, jr.

In 1821, Ebenezer Carleton caused a small building to be removed on to the land in controversy, and from that time to the present it has remained there, occupied by tenants under him and these defendants.

The defendants claimed to hold the land by virtue of peaceable and undisturbed possession, by themselves and their grantor, for a period of twenty years. It appeared that until 1821 no building had been placed upon the premises, and that the premises had not been inclosed in any manner ;

Bailey *v.* Carleton.

that from 1815 to 1821, and since, Ebenezer Carleton had been in the habit, occasionally, of leaving carts, ploughs and farming utensils upon this land, and also of leaving lumber upon it. Evidence was offered to show that it had been a common practice, by teamsters and owners of lumber, for thirty or forty years, to lay lumber upon that side of the road, in Bath village, upon this tract, and above and below it, and that said Carleton and other individuals had been in the habit of laying lumber along the river bank in this manner.

It was contended, by the defendants' counsel, that Ebenezer Carleton having entered upon the house lot, claiming title to and occupying the same, such entry extended to the contiguous tracts described in the same deed, and that entry and occupation of one of the tracts extended to the whole, in the same manner as though they had been conveyed in one description—that the defendants' grantor having entered upon and disseized the plaintiff's grantor, October 19th, 1815, and the plaintiff never having reëntered before action brought, he had no legal seizin in the demanded premises within twenty years next before the commencement of his action, and his suit, therefore, could not be maintained—and that the laying of lumber on the demanded premises, by persons claiming no right thereto, would not affect the exclusive character of the defendants' adverse possession.

The court instructed the jury that an entry upon, and occupation of one of the tracts conveyed, would not extend to the other tracts described in the deed, so as to give a title to them by possession—that entry upon, and occupation of, any portion of the demanded premises would extend to the whole tract entered upon—that it was not essential that any portion of the land should be inclosed, in order to constitute an adverse possession—that such possession might be acquired by the laying of lumber upon said tract, or otherwise occupying it as a place of deposit for farming utensils, &c., but that such possession must be an open, visible possession, such

as would give reasonable notice of such adverse possession, to the owner.

A verdict was rendered for the plaintiff, and the defendants moved to set the same aside, for misdirection.

*J. L. Carleton*, for the defendants. Carleton's entry and occupation of the house lot, described in Town's deed to him, of October 15th, 1815, was an entry and occupation of the demanded premises, described in the same conveyance, and the court below erred in giving contrary instructions to the jury. 4 *Mass.* 416; 3 *N. H. Rep.* 49, *Lund* vs. *Parker;* 13 *Johns.* 406, *Jackson* vs. *Smith;* 2 *Greenl.* 275; *Ditto* 176; 3 *Johns. Cas.* 109, *Jackson* vs. *Lunn;* 1 *Cowen* 276; 14 *Mass.* 145, *The Pejepscut Proprietors* vs. *Ransom;* 18 *Mass.* 114; 17 *Mass.* 68; 14 *Mass.* 434; 20 *Pick. R.* 458, *Allen* vs. *Holton.*

But, independently of authorities, what good and sufficient reason can be urged why the entry of a part of the premises, conveyed by Town to Carleton, was not also an entry of the whole? It has been objected, that the deed divides the premises conveyed into three several lots, parcels, or tracts, and gives a separate description of each, and that, therefore, an entry of one piece is not an entry of the others. Suppose that all the premises granted had been contained in one general description, giving the external boundaries of the whole, without a particular description of the parts composing the same; would not, then, an entry of the house lot, in October, 1815, have extended to the demanded premises, viz: the ten rods and the four rods between the road and the river? Most certainly it would. The case itself finds that instruction given to the jury. But what difference in law can exist between one general description, and several particular descriptions, of the same land conveyed? It passes as effectually in one manner as another. A description of the land with sufficient certainty, which is always left to the court to determine, is all that the law requires. 8 *Mass.*

162 ; 2 *Kent's Com.* 460.  Though separately described, the case finds the three parcels of land, viz: the house lot, the ten rods, and the four rods, all connected except by the road, unfenced, and running the same courses with each other, the demanded premises being but an extension of the northerly and southerly lines of the house lot.

On the second point, we rely on the statute of limitations without the aid of the deed from Amos Town to Carleton. Where a party has occupied, claiming title, the occasional use by others, not claiming title, would not destroy the adverse character of the party's claim.

*Goodall*, (with whom was *Bartlett*,) for the plaintiff.  We might safely admit that an entry on one, is an entry on all ; but a bare entry, or occasional use of land, to which one has not the right, is not even a disseizin of the true owner.  2 *Salk.* 246 ; 2 *N. H. Rep.* 456, *Wendell* vs. *Blanchard ;* 6 *Johns.* 197, *Smith* vs. *Burtis ;* 1 *Burr.* 108, *Taylor* vs. *Horde.*  If so, the entry is nothing, the occupancy is every thing.  It must be an actual, open, visible, continued occupation of the tracts sued for, to oust the true owner of his rights.  An entry and occasional use are but a series of trespasses, and give no notice to the true owner of an adverse claim.  To constitute disseizin only, there must be an actual occupation and holding the true owner and all others out, and at defiance.  7 *Mass.* 381, *Pray* vs. *Pierce ;* 6 *Johns.* 197 ; 4 *Kent's Com.* 469, 477 ; 2 *Greenl.* 281 ; 9 *Cowen* 553, 556 ; 11 *Peters* 41, *Ewing* vs. *Burnet ;* 6 *Pick.* 178 ; 4 *Mass.* 416, *Proprs. Kennebeck Purchase* vs. *Springer.* There must be an actual possession of the tracts sued for, and continued twenty years, open and notorious, to give title by possession ; such a possession as will give the true owner notice, and put him on his guard, and on an exercise of his rights.  6 *Pick.* 178 ; 13 *Maine R.* 178, *Alden* vs. *Gilmore ;* 4 *Mass.* 416 ; 14 *Pick.* 224 ; 13 *Pick.* 240, *Thomas* vs. *Marshfield ;* 2 *Fairf.* 309, *Kinsell* vs. *Daggett ;* 7 *Mass.*

381; 2 *N. H. Rep.* 456; 2 *Johns. R.* 234; 8 *Johns. R.* 220; 1 *Caines' R.* 358.

It is a settled rule that the doctrine of adverse possession must be taken strictly, and not be made out by inference, but by clear and positive proof. 9 *Johns.* 167; 1 *Cowen* 285; 2 *Pick.* 134. It must be such an open, visible occupancy that the proprietor may at once be presumed to know of the nature and extent of the claim. 2 *Greenl.* 284, *Proprietors of Kennebeck Purchase* vs. *Labaree.* It must, from the very nature of the thing, be exclusive. 4 *N. H. Rep.* 376, *Waldron* vs. *Tuttle;* 2 *Greenl.* 281; 9 *Cowen* 553, 556; 11 *Peters* 41; 13 *Maine R.* 336, *Thomas* vs. *Patten.*

The question of adverse possession is one for the jury to find, and it was properly left for them to determine. 7 *Mass.* 383; 9 *Cowen* 530, *Clap* vs. *Bromagham;* 2 *Fairf. R.* 315, *Hinsell* vs. *Daggett;* 8 *Greenl.* 242, *Dennett* vs. *Crocker; Angell on Lim.* 87; 5 *Peters* 438, *Bradstreet* vs. *Huntington.*

*Bell*, in reply. The line is broad between cases where the entry is with title, and those where it is without any.

It makes no difference whether the description in the deed is contained in one or twenty parcels. 2 *Greenl.* 275; *Ditto* 176, *Little* vs. *Megquier.* It is to be regarded as one tract.

The entry of Carleton on the tract in question was a disseizin.

If the party was disseized twenty years, the action cannot be maintained. How has he become seized? He has made no entry.

The instruction, that the character of the possession must be such as to give notice to the owner, is mistaken.

No commixture of possession, without claim of right, could disturb the possession of the grantee.

PARKER, C. J.* The general rule that where a party having color of title enters into the land conveyed, he is presumed to enter according to his title, and thereby gains a constructive possession of the whole land embraced in his deed, seems to be settled by the current of authorities. 3 *N. H. Rep.* 27, *Riley* vs. *Jameson ; Ditto* 49, *Lund* vs. *Parker, and cases cited.*

And such entry may operate as a disseizin of the whole tract ; and the possession under it, continued for the term of twenty years, may be deemed an adverse possession, which will bar the entry of the owner after that lapse of time. 3 *N. H. Rep.* 49 ; 13 *Johns. R.* 118, *Jackson* vs. *Ellis ; Ditto* 406, *Jackson* vs. *Smith ;* 18 *Johns.* 355, *Jackson* vs. *Newton.*

Exceptions have been suggested to the rule in some cases. One is, where a large tract of land is embraced in the deed, and a small part only has been improved. 1 *Cowen* 276, *Jackson* vs. *Woodruff ;* 6 *Cowen* 677, *Jackson* vs. *Vermilyea.* Another, where the deed under which the claim is made includes a tract greater than is necessary for the purpose of cultivation, or ordinary occupancy. 8 *Wend. R.* 440, *Jackson* vs. *Oltz.*

These exceptions seem not to be very definite in their application, for lots, like other things, are large or small by comparison, and a tract which would be much too large for cultivation by one, would not suffice for another. But they serve to show the principle upon which the rule is founded. It is, that the entry and possession of the party is notice to the owner of a claim asserted to the land ; that the limits of such claim appear from the deed ; and that if the owner for twenty years after such entry, and after notice, by means of the possession, that an adverse claim exists, asserts no rights, he may well be presumed to have made some grant or conveyance, co-extensive with the limits of the claim set up ;

---

* WOODS, J., having been of counsel, did not sit.

or that, after such lapse of time, a possession, under such circumstances, ought to be quieted.

There should be something more than the deed itself, and a mere entry under it—something from which a presumption of actual notice may reasonably arise. It is not necessary to show actual knowledge of the deed. Acts of ownership, raising a reasonable presumption that the owner, with knowledge of them, must have understood that there was a claim of title, may be held to be constructive notice, that is, conclusive evidence of notice. 8 *N. H. Rep.* 264, *Rogers* vs. *Jones.* The owner may well be charged with knowledge of what is openly done on his land, and of a character to attract his attention. The presumption of notice arises from the occupation, long continued ; and the notice of the claim may well be presumed, as far as the occupation indicates that a claim exists, and the deed, or color of title, serve to define specifically the boundaries of the claim or possession. If the occupation is not of a character to indicate a claim which may be co-extensive with the limits of the deed, then the principle that the party is presumed to enter adversely according to his title, has no sound application, and the adverse possession may be limited to the actual occupation.

Thus cutting wood and timber, connected with permanent improvements, may well furnish evidence of notice that the claim of title extends beyond the permanent improvements, and the deed be admitted to define the precise limits of the claim and possession, provided the cutting was of a character to indicate that the claim extended, or might extend, to the lines of the deed. It might, at least, well indicate a claim to the whole of a tract allotted for sale and settlement, of which the party was improving part, unless there was something to limit the presumption. But no presumption of a claim, and of color of title beyond the actual occupation, could arise respecting other lots than that of which the party was in possession. And where the possession was in a

Bailey *v.* Carleton.

township, or other large tract of land, which had never been divided into lots for settlement, no particular claim, beyond the actual occupation, would be indicated, and of course no notice of any such claim of title should be presumed. 6 *Cowen's R.* 617, *Jackson* vs. *Richards ;* 15 *Wend. R.* 597, *Sharp* vs. *Brandon.*

If the possession was not of a character to indicate ownership, and to give notice to the owners of an adverse claim, although the grantee might be held to be in possession according to his title, in a controversy with one who should make a subsequent entry without right, his possession ought not to be held adverse to the true owner, to the extent of his deed, merely by reason of the deed itself, even if recorded, nor by any entry under it. There are several cases which tend to sustain this view of the principle. 6 *Pick. R.* 172, 176, *Poignard* vs. *Smith ;* 13 *Maine R.* 178, *Alden* vs. *Gilmore ;* 4 *Mass. R.* 415, *Prop'rs of Kennebeck Purchase* vs. *Springer ;* 4 *Vermont R.* 155, *Hapgood* vs. *Burt ;* 1 *Peters' R.* 41, *Ewing* vs. *Burnet ;* 2 *Greenl.* 176, *Little* vs. *Megquier.*

We are of opinion that the rule cannot apply to a case where a party, having a deed which embraces land to which his grantor had good title, and other land to which he had no right, enters into and possesses that portion of the land which his grantor owned, but makes no entry into that part which he could not lawfully convey. There is no notice in such case to the owner of the land thus embraced in the deed, and no possession which can be deemed adverse to him. If it may be said that the color of title gives such a constructive seizin and possession that the grantee could maintain trespass against any person who did not show a better right, (that is, a title, or prior possession,) there is nothing in the nature of it which can give it the character of a disseizin, or possession adverse to the true owner, so as to bind him. For that purpose, there must be actual possession of

some portion of the land of such owner, and that of a nature to give notice of an adverse claim.

It is not necessary to settle whether an entry into an enclosed lot, under a deed purporting to convey unenclosed lands adjoining, belonging to the same person, would operate as a disseizin of the latter. Where two separate lots, included in the same deed, belong to different owners, an entry into one can in no way operate as a disseizin in relation to the other.

The entry into the house lot, therefore, to which Amos Town, who conveyed, had title, was no disseizin of Solomon Town, who had title to the lot unenclosed, on the other side of the road.

The next question is, what entry into the land itself is sufficient.

Here was an entry in 1821, upon the tract in dispute, and a possession, by placing a building on it, by Ebenezer Carleton, the grantor of the defendants. This was, without doubt, an act of ownership. The character of it was adverse to the title of Solomon Town, and it was of a nature to give notice that Carleton claimed title to that land.

But the possession before that time was of a more ambiguous character.

Ebenezer Carleton, to whom the conveyance was made in 1815, made no entry or use of the lot up to 1821, except by laying lumber upon it, or placing farming utensils there. Those acts by one having a deed, if nothing further was shown, might be held to be a sufficient entry and possession to operate as a disseizin of Solomon Town. But it appeared that so far as the laying of lumber on the lot was concerned, this was no more than Carleton, and divers other persons, had been in the habit of doing before, and that others continued to do the same afterwards. Those acts, prior to 1815, were done by him, and others, without claim of title, and of course in subservience to the title of the true owner. If not acknowledged trespasses, they must have been under a

license from Solomon Town. The same acts continued after a deed of other lands, by a person having good title to those lands, could not operate as any notice to the owner of this tract, that a deed had been made covering his land also, and that there was an occupation under that deed, or under any claim of right to occupy adversely to him. The additional act of leaving farming tools on the land does not seem to change the character of the possession.

It was not, therefore, until 1821, when the building was removed on to the land, that any entry was made upon it by Carleton, from which Solomon Town, with knowledge of the entry, should have understood that Carleton made any claim to the ownership of the lot ; and until that time, therefore, there was nothing from which an ouster can be inferred, and no possession by him that can be deemed adverse, except at the election of the owner. 21 *Pick.* 140, *Magoun* vs. *Lapham ;* 13 *Maine* 336, *Thomas* vs. *Patten.*

*Judgment for the plaintiff.*