# CARROLL,

## JULY TERM, A. D. 1854.

## HOAG v. WALLACE.

As a general rule, if one enters upon land under color of title, he is presumed to enter claiming according to the extent of his title; and such entry will give him constructive possession of all which his title covers.

But there can be no constructive possession without color of title. And where an entry is made without color of title, possession does not extend beyond actual occupation.

Whether an entry into one of several lots in a town, under color of title to the whole, can be construed to extend to such of the lots as are in a different range from that upon which the entry is made, and which do not adjoin it, *quære?*

Where, for the purpose of making out a title by adverse possession, a party shows that he has been in the occupation of the land, taking the profits of the same, evidence that his grantor attempted to purchase the lot of a third person, prior to the conveyance to him, taken in connection with the fact that the grantor informed him, at the time of the conveyance, that he had no title to the land, is competent as having a tendency to show the nature of the possession.

WRIT OF ENTRY, to recover lot No. 24, in the tenth range in Sandwich, in this county. The tenant disclaimed a part, and as to the rest pleaded the general issue.

The demandant introduced a deed from Joseph Cilley to himself, dated the 13th day of November, 1845, which purported to convey lots Nos. 19 and 22, in the ninth range; 17 and 19 in the twelfth range; and 24 in the tenth range, of one hundred acre lots in said town. Also a copy of a deed of the same lots from John A. Cilley to said Joseph

Cilley, dated the 25th day of December, 1839. Also a copy of a deed from Martha Cilley to John A. Cilley, dated January 8th, 1833, conveying the same lots. Also copies of deeds to Martha Cilley from Harriet Cilley and Joseph Cram and Mary Cram, his wife, dated August, 1832, quit-claiming all their rights to said lots. Also a copy of the will of Martha Poor, duly proved on the 14th day of July, 1830, by which she devised to her daughters, Martha Cilley and Harriet Cilley, and to her nephew, Joseph L. Cilley, in trust for Mrs. Cram, each one-third of all her estate. The property devised is described as follows : " all my real estate and personal estate."

The demandant then introduced said Joseph L. Cilley as a witness, who testified that in the spring of 1832, in behalf of all interested under the will, he went to look after said lots and ascertain their value ; that he entered upon and sold one of them, but did not go upon No. 24, in the tenth range ; that he had paid taxes upon those lots for his mother and aunts, and had in his possession receipts showing the payment of taxes, by Mrs. Poor and others, from 1777 to 1830. At this part of the testimony, the defendant's counsel inquired what effect such payments could have, and the court remarked that the payment of taxes did not constitute any title or possession, but was evidence of a claim, and as such might, in some cases, be admissible. No exception was taken to the ruling suggested, till the verdict had been returned.

The demandant proved further that in August, 1848, he entered upon the lot, under his deed ; and he there rested his case.

The tenant introduced a deed of the lot to himself, dated the 7th day of August, 1850, from Samuel Wallace, his father, and proved that the latter was in the occupation of the part not disclaimed, for nearly twenty years, taking the income and profits thereof to his own use ; but whether or

not this occupation began earlier than the spring of 1832, was uncertain.

The plaintiff then proved that some time between 1829 and 1833, and before Samuel Wallace occupied, one Hall and one Dustin, each claimed about three acres, and each sold out his betterments to Wallace, telling him that they had no title and claimed none, and that lot 24 was called the Poor lot by Hall and Dustin and by Samuel Wallace, while in the occupation.

Wallace had entered upon lot 25, under an agreement for a deed, and built upon it, very near the line between 24 and 25, as the line was run in 1848. The pieces bought of Hall and Dustin were all of 24 that was claimed at the time Wallace bought, except a narrow strip adjoining 25; but Wallace immediately extended his clearing, so as to include all the land which is now claimed by the defendant, and fenced it, and occupied it in connection with 25, (his fields and pastures, as fenced, being jointly upon both lots,) until he sold to his son, in the year 1850.

The demandant's counsel contended that Samuel Wallace claimed no title, but intended to hold all, not within the limits of 25, in subordination to Mrs. Poor; and also contended that the possession of Hall and Dustin should be regarded as her possession. To sustain these positions, he offered to show that Hall and Dustin, while in the occupation of their several pieces, applied to Mrs. Poor's agent, in order to purchase the lot, and were informed that the Poor estate was not then in a condition to sell the lands belonging to it.

Aside from what appears in this case, there was no evidence that either Hall or Dustin or Wallace was Mrs. Poor's tenant, and none other was offered except as above stated; and the court ruled that if Hall or Dustin applied to Mrs. Poor's agent to purchase, and received the answer that the estate was not in a condition to sell, it would not make them her tenants, nor could the jury legally infer from

it that Samuel Wallace did not claim the land while he was in the occupation, and, therefore, excluded the proposed testimony. Samuel Wallace was examined as a witness on the part of the defendant.

The court instructed the jury that neither party had proved any title but by possession, and of these the earlier must prevail; that the demandant had a possession in 1848, but that the entry in 1832, upon another lot in the same town and county, was not an entry upon this lot, because (if for no other reason) it was before the date of either of the deeds, and the will of Mrs. Poor simply devised all her real estate, without designating any particular lots or parcels; that if Samuel Wallace had a possession of the land in dispute before 1848, their verdict should be for the tenant, whether Wallace did or did not have a perfect title to lot 24, and although his possession might have happened from a misapprehension on his part of the true line of lot 25.

The court also instructed the jury that the mere fact that Wallace was upon the land, taking the income and profits, would not alone necessarily constitute a possession by him, for he might have held it for others; but if he was in the occupation of it himself, claiming it, then he had a possession; that the taking of the profits of land to his own use, by an occupant, is a sufficient assertion of a claim to the land, if there is nothing to control its effect; and they would decide upon all the evidence whether the presumption of a claim to the land by Samuel Wallace, arising from his occupying it and receiving the income, was or was not controlled by other circumstances, and return their verdict for the party who had the first possession.

The jury returned a verdict for the tenant, which the demandant moved to set aside because of the rulings and instructions of the court, and because it should have been held and the jury charged that the entry of Samuel Wallace having been as a purchaser of the improvements only, he should be presumed to have continued in possession,

claiming only that interest, and that the burthen of proof was upon the tenant to show that he afterwards claimed the land.

*Emerson* and *Bell*, for the demandant.

The verdict should be set aside—

I. On account of the rejection of the evidence, showing that Hall and Dustin had admitted the title of Mrs. Poor, for the purpose of showing the character of their possession and of that of the tenant. *Lund* v. *Parker*, 3 N. H. Rep. 50; *Blaisdell* v. *Martin*, 9 N. H. Rep. 255; Stearns on Real Actions 38; *Towle* v. *Ayer*, 8 N. H. Rep. 59; *Straw* v. *Jones*, 9 N. H. Rep. 402; *Marshall* v. *Pierce*, 12 N. H. Rep. 129; *Watkins* v. *Peck*, 13 N. H. Rep. 360.

II. The mere entry and survey, by the demandant, under a claim of right, was sufficient evidence of seizen, as against parties who held possession disclaiming any title. *Woods* v. *Banks*, 14 N. H. Rep. 111; *Cobleigh* v. *Young*, 15 N. H. Rep. 493; and it should have been so held at the trial.

III. The charge to the jury was erroneous, because it assumes that the occupation and taking the profits alone was evidence of a claim of title by Wallace. It should have been held that his occupation, as it commenced by a mere purchase of improvements from parties disclaiming any title, was no evidence of any claim of title by Wallace, though its character might afterwards become changed by the length of time it continued, or by other facts. *Atherton* v. *Johnson*, 2 N. H. Rep. 31; *Marshall* v. *Pierce*, 12 N. H. Rep. 131; 16 Johns. 301; *Byron* v. *Van Hoeson*, 5 Johns. 36; *Riley* v. *Jameson*, 3 N. H. Rep. 26; *Bailey* v. *Carlton*, 12 N. H. Rep. 18; *Jackson* v. *Horden*, 4 Johns. 210.

IV. It should have been held that the entry of J. L. Cilley, as agent of Mrs. Poor, upon some of the lots of land claimed by her under the same title as that of the deman-

dant in this action, was sufficient—that lot not being held adversely—to give her possession of the whole. Coke on Lit. 150; *Copp* v. *Neal*, 7 N. H. Rep. 275; *Riley* v. *Jameson*, 3 N. H. Rep. 26.

*J. Eastman, Hobbs & Sanborn*, for the tenant.
We take the following positions:
I. It does not appear that Martha Poor ever had any title to, or possession of, the land in question.
II. The entry of Joseph L. Cilley upon another lot was not an entry upon this lot.
III. Mary Cram, the *cestui que trust* under the will of Mrs. Poor, could not convey the legal estate without the concurrence of Joseph L. Cilley, the trustee. Cruise's Dig. Title Trust, ch. 2, § 7, (4th ed.); Cruise's Dig. ch. 4, §§ 4, 5; *Blake* v. *Foster*, 8 Term. 487.

EASTMAN, J. Upon the trial of this action in the common pleas, the demandant showed no legal title to the lot in question. He attempted to trace his title from Mary Poor, but he showed no title in her, and no claim of title, except so far as the payment of taxes on the lot might, in connection with other testimony, be evidence of claim. But even the payment of taxes by her upon this lot was not proved. There is a want of directness in the evidence upon this point. It does not fix the payment by her upon this lot. Neither was there any entry or possession by her shown, she having died prior to July, 1830; and in her will, disposing of her property, no mention of the lot is made evincing that she claimed it. The attempt, then, to show a legal title in Mary Poor, as the foundation of the demandant's right to the lot entirely failed.

The entry by Cilley, in 1832, upon the other lots in the town, but not upon this lot, was not sufficient to commence a title by possession. This lot was in a different range from that of the others, and, so far as appears from the case

wholly disconnected from them. Whatever entry he made was without title or color of title; and an entry, under such circumstances, upon one portion of a lot or tract or parcel of land, furnishes no intendment to extend the possession beyond the lot or parcel actually occupied. *Riley* v. *Jameson,* 3 N. H. Rep. 23; *Jackson* v. *Woodruff,* 1 Cowen 286; *Brandt* v. *Ogden,* 1 Johns. 157; *Proprietors of Kennebec Purchase* v. *Springer,* 4 Mass. Rep. 418; *Bailey* v. *Carlton,* 12 N. H. Rep. 9; *Lund* v. *Parker,* 3 N. H. Rep. 49.

The general rule is undoubtedly true, that an entry under color of title is presumed to be according to the extent of the title, and that a constructive possession follows the entry to the limits of the land contained in the title. *Copp* v. *Neal,* 7 N. H. Rep. 275; *Jackson* v. *Wheat,* 18 Johns. 40; *Breck* v. *Young,* 11 N. H. Rep. 485. And the authorities before cited generally sustain the same position.

But in *Bailey* v. *Carlton,* it was held that where a party having a deed which embraces land to which his grantor had good title and other land to which he had no right, enters into and possesses that portion of the land which his grantor owned, but makes no entry into that part which he could not lawfully convey, he has no adverse possession of the latter. And an examination of the remarks, upon this point, of the very learned chief justice, who delivered the opinion in that case, would seem to show that, even admitting that Mrs. Poor had color of title to all of the lots named, it would be very questionable whether an entry upon a lot in one range could be construed to extend to a lot in another range, unless it should be shown that the two were adjoining lots.

The fact that Cilley may have made the entry which he did as agent for the heirs of Mrs. Poor, and that heirship will, in some instances, give color of title even when the ancestor has none, cannot aid the demandant, because, in this case, no possession, right, or color of right to the lot is

shown in Mrs. Poor sufficient to give the heirs color of title under her.

The only title, then, which was shown by the demandant was one of possession, which commenced in 1848; and the court were right when they instructed the jury that neither party had proved any title but by possession, and that in regard to such titles the earlier must prevail.

The issue between the parties being narrowed down to one of possession merely, we think the proposition of the demandant to prove that Hall and Dustin, while in the occupation of a portion of the lot, made application to purchase the lot, taken in connection with the evidence that when Hall and Dustin sold out to Samuel Wallace, they told him they had no title to the lot, and that the lot was called the Poor lot by Hall and Dustin and Wallace, ought to have been received. It had some tendency to prove that Hall and Dustin were in under Mrs. Poor, and that Wallace, purchasing of them, also held under her. The evidence may have been slight, but we think it should have been admitted. It was, also, a circumstance which the jury might well consider, in connection with others, in coming to the conclusion whether Wallace, by taking the profits of the land simply, was asserting a title to the same. It had a tendency to explain his possession, and to rebut the inference of claim by him, arising out of the fact of his taking the crops and income of the land.

For the rejection of this evidence, the verdict must be set aside and a

*New trial granted.*